Petitioner's counsel, Ms. Hong, I think, is going to start us off. If you could let us know how much time you plan to reserve for rebuttal. Yes, Your Honor. Oh, wait. Hold on. Maybe I was wrong. It looks like the government's counsel is going to be by video. But other than that, I think the rest of it is right. So, you can take us away. Good morning. May it please the Court, my name is Kari Hong, and I represent Petitioner Alex Rivera. With leave of the Court, I wish to reserve two minutes for rebuttal, and I will watch my time. I will address three items. Mr. Rivera's cat claim as a former gang member, acquiescence, and then his sexual orientation. On the first air, the BIA and IJ only considered Mr. Rivera's cat claim based on being an imputed gang member. But Dr. Young testified about a distinct and alternative source and reason for Mr. Rivera's risk of torture. As a former gang member, gangs will have a motive to kill him in a brutal and public manner to maintain their control of others by communicating to the public, not to leave the gang. Your counsel, and this is the argument that has been made, I think was made not just to us, it was also made to the BIA that the IJ did mention Dr. Young's testimony in the IJ's decision. But I think your argument to the BIA, and I think it's consistent that you've made all the way through, is that the IJ only considered the little piece that the IJ wrote about of Dr. Young's testimony. Does that sound correct? Yes, but the little piece is what Cole calls dispositive. But only considered the little piece, and so there's a big piece that wasn't considered, I think, was your argument. Correct. And I think you've continued to make that argument. The only thing that's difficult is the IJ did talk about Young's testimony, and if you read, the IJ had a whole hearing with Young, and you can read where the IJ actually talked with Young. The judge, I can't remember if it was him or her, but him or herself talked with Young. But then you made the argument to the BIA that you're kind of making to us, and the BIA, it's hard for me to imagine that the BIA didn't look at the record itself, the entire record, and it also talked about Mr. Young and its opinion. And so I guess your argument depends upon the fact of specifically what the IJ and the BIA said about Mr. Young, but it assumes, it asks us to assume that those two tribunals did not think of anything else about what Mr. Young had talked about just because they weren't mentioned. But that's asking for, first of all, I don't think it's a legal matter, the IJ. Would you agree that the IJ or the BIA does not necessarily need to mention something to have considered something? Well, when it comes to expert evidence, the standard is under Cole and the standard is under Velezquez-Semilloa, where both cases said something is amiss when the agency fails, either misstates the expert evidence or fails to consider what they call highly probative or potentially dispositive evidence. Right, and here it's not, you can't really argue that they didn't think about what Dr. Young was saying, because they did mention Dr. Young. They did, but they didn't mention the former gang membership. On AR-81 and the IJ, there are three headings that the IJ considers to be aggregate risk. One of the headings is imputed gang membership, the second is sexual orientation, the third is mental health. Nowhere does the IJ mention former gang status. And likewise with the BIA at AR-5, it only considers whether it'll impute gang membership. So they're looking at active gang membership and not former gang membership, and this is significant because the expert provided a motive that is present only for former gang members. Gangs want to control El Salvador, and the way that they do that is that if they see anyone who's opposed to them, who has rejected or has shown the public that they can evade the gangs, they will publicly and brutally kill them. So at the end of the day, you're right, but the expert threw it all kind of into the pot, because if I remember right, at the very end said, you know, was asked the question by counsel, said, so what do you think the percentages are, and basically stated the stand. You know, it said altogether, I think it's more likely than not that he will be tortured  And so, I mean, you think the IJ, it's interesting because the expert talked about it and then put it all together, and under your theory, the IJ would have had to sort of deconstruct the experts. You know, the IJ is very aware of the expert, mentions the expert, so is the BIA, but they would have to deconstruct and then say, I'm going to pull the piece out that you're saying, and say, it's just kind of an odd way to think that the agency would have analyzed it here. The regulations say all evidence have to be considered. Qaeda, Al-Agar, and again, Velazquez-Semilloa makes it very clear that the aggregate risk has to be considered. And I think the best case in point is Velazquez-Semilloa, where there the expert said that there are two theories, and the BIA only considered one. They said, yes, he's an active gang member, and that doesn't rise to 50%. Let me understand as best I can the argument that the IJ and the BIA missed, and that is that the gang members in El Salvador would do something bad to, would torture your client, not because he was previously a gang member in El Salvador, but because he was previously a gang member while in prison in the United States. Correct? Well, but the expert says because he has left a gang. I know, but it's because he left a United States gang rather than because he left an El Salvador gang. That's the argument. Yes. Yes. And again, that's at 208, 209, and 210 of the record where this expert testimony arises. And you agree that the expert took, so your argument is the expert made that argument, right, and amongst other arguments about being a sexual minority, about these other things, and then the expert kind of put it all together and reached the final conclusion. And what I'm trying to figure out is, like, how your theory is that the IJ, which obviously did consider Dr. Young's testimony in some sense, right, and I don't think you can dispute that because the IJ mentioned it and so did the BIA, but that somehow the IJ then just sort of disregarded that one piece but accepted the rest of it? Because it's hard because it's all mixed together. It's kind of all mixed together in Dr. Young's conclusion. Yes, and so that is the proper end result. It has to be mixed together, and the BIA decision of GA is an example where the Iranian man was at risk of torture based on religion and ethnicity and length in residence and in his criminal history. Now, there the BIA said under the regulations, you have to look at this in the aggregate, and what happened here is that the IJ just took out, they took out the former gang membership. Now, you don't have any, just to be clear, you don't have any explicit, like the IJ didn't say I'm not concerned, that's not your argument. Is it because the IJ didn't discuss that one piece, then you're saying that implicitly the IJ must have just ignored that. And that's what happened in Velazquez-Samayoa, where there the IJ only and the BIA only looked at his active gang membership and did not look to the expert evidence that showed that he was a gang leader. And so in that way, the IJ and the BIA disaggregated those risks, and that is the error, because the regulations and the BIA case law makes it very clear you have to look at all these together. And so what you're asking for is a remand where we direct the agency to consider that factor. Absolutely, and that's under Cole, under Velazquez-Samayoa, and then from two days ago, the Gonzales-Castillo case that this court decided also has that remedy. How do we make the distinction between a case where we do have to send it back to consider something that's not mentioned, and other cases where something's not mentioned and they don't have to send it back, because there's an awful lot of evidence that comes in. And to expect that the IJ and that the BIA would discuss every bit of evidence is extreme. Why is this evidence sufficiently important that it has to be sent back? Well, under Cole, it is highly dispositive, highly probative, and potentially dispositive. What is key here is that the expert evidence has the motive. It is not clear, and if you look at only just gang members, there's 60,000 gang members in the country. Of course the IJ would say, well, there's nothing unique to him in particular, but here we have a motive. He's not a gang member. He's a former gang member, and that presents a very unique threat to the entire operation of the gang and its operation, and because that motive was not considered, that is the error that occurs, which requires the remand for the agency to consider. On acquiescence, again, the agency only considered what it called, quote, human rights abuses when finding no acquiescence, and we had the same error that this record has an astonishing degree. I want to take you back, Percenta, because I was wondering the same thing that Judge Fletcher just kind of asked. So I'm wondering, you know, there's, I can't remember, it's either four or five different things that Dr. Young was arguing would sort of all go together and create this risk, and did the IJ, are some of those four not such that the IJ or the BIA would need to expressly discuss them in order to be seen to have committed error that we would send it back, or are they each one independently such that the IJ and the BIA needed to have discussed each of them sort of separately? It's kind of, I'm trying to get to the real, like, how does this test work? Because we say that they don't have to discuss everything. We do have these cases that you say that, well, yeah, but if it's really important, it needs to be discussed. So where do we draw the line? Well, Cole says it's highly dispositive, and on this record, I did not allege that there was an error in the mental health evidence, because looking at it as a whole, reasonable minds could disagree that there wasn't enough showing that there was a motive, there was a showing, it's very much like JFF, that it was a partial, but it didn't convince me that that was the reason why he was in harm's way. So I did not touch that in the briefing, and I agree that the court need not touch this. But on the former gang membership, we have a motive that was never considered, and the BIA and IJ never mentioned the former gang status, which makes it distinct. The other factor is sexual orientation, where what happened here is that the IJ said, well, there's no past torture, where the BIA said, well, actually, we do agree that rape constitutes past persecution, but then they just kind of reaffirmed the denial in the harmless error standard. The problem with your evidence on the past torture, I don't think there's any doubt that rape can be past torture, is that it was not performed by any person who's likely to do it in the future. The fact that he was raped by a neighbor in the past, we have no information as to whether the neighbor is still living. We've had, what, 30 years have passed now? He's in his 40s or 50s now? Yes. And, Your Honor, this goes back to why there is the error under Cole that this is a misstatement of the record. The claim isn't in danger for one particular neighbor. Right. The expert explained that there is violence in the country and that the police members. Right. No. The only thing that I'm concerned about is that I'm not sure that there's any, that as we would with persecution on account of, say, sexual orientation, that you would get the same presumption with respect to torture because there's no evidence in the record that the past torturer will be present in his future. You do have evidence from Dr. Young that in El Salvador the treatment of gays and lesbians is very, very poor and that he is likely to be persecuted on that ground. Well, Your Honor, for someone fleeing religious persecution where their church was bombed, they do not need to show that the same bomber is out to get them. They have to just show a general culture where that risk of being bombed or persecuting religion will occur. This happened when he was a child by a neighbor, and that circumstance isn't, you know, isn't going to be presented in this person's life again, right? But Dr. Young said the risk that he faces is not from the neighbor, but the fact that he can be detected as gay. And being detected shows that the police will go after him, the other gangs will go after him. I think your evidence is pretty good on that. I just don't see what the relevance is of the past torture. It shows that they did detect him and that they abused him just as the expert said he would. So in that respect, that is relevant to see if this risk will be actualized in the way that the expert said. And you're suggesting that the evidence that the neighbor abused him as a child tells us that he's more vulnerable than any other adult gay man in the society now? It corroborates the expert's testimony that when he's detected, he will be harmed and he was detected. No, no, that's not my question. It's basically Judge Bybee's question. I'm trying to figure out the relevance. Is your argument that because he was raped as a child, because having been detected as homosexual by the neighbor, does that make it any more likely than any other adult gay man in El Salvador that he would be raped? That's the question. The expert did not speak to that. My understanding was that there wasn't an argument that he was raped as a child because he was detected as homosexual. I thought he came out later in life or something like that. The neighbor used Maricon and other anti-gay slurs against him. So the neighbor did abuse him because they perceived him as a boy to be gay, even though he himself did not embrace that identity until later. All right, well, we've taken you way down in your time, but you've seen we usually give you time for rebuttals. So I think we'll definitely give you time for trouble, but we'll turn to the government's case. You may proceed, counsel. Good morning, your honors. May it please the court. I'm Ashley Arthur on behalf of the Attorney General of the United States. The petition for review should be denied because petitioner's claim relies on his assertion that El Salvador is a failed state. This is incorrect according to the U.S. State Department. It's certainly not supported by the record. And in any event, foreign policy decisions are for the State Department and executive branch. His failure to establish acquiescence alone is dispositive of his claim. The record shows El Salvador's good faith efforts. Counsel, I took Dr. Young's reference to a failed state to be a little bit of puffery, and I didn't find it to be critical to his conclusions. So his conclusions were that you had a number of different factors here, and that particularly once you aggregated those factors, that is, that he was a former gang member, that the gangs are very, very active in El Salvador, they would be on the alert for him, and that he is also a gay man, and that combination of being a gay former gang member places him at additional risk that he would not be subject to if he was either just a former gang member or just a gay man returning to El Salvador. You put that in combination with a third factor, that is, that he has a criminal record in the United States, and that suggests that the Salvadoran officials will be either complicit in his persecution and torture or they will be happy to look the other way. We have three cases in the last two years, one just this last week, in which we've had expert witnesses, very well-qualified experts, who have testified at length about conditions in El Salvador, and we've sent them back now three times to the BIA because we did not feel that they had sufficiently addressed the expert. Why shouldn't we do that here? Well, here a petitioner repeatedly asked this court to determine and agree with petitioner that El Salvador is a failed state, and that there is corruption, and that the gangs are the de facto government, and there is good faith evidence in the record that shows quite the opposite. Is there any evidence? Counsel, I don't think you even addressed my question, even come close. Is there any evidence in the record that the BIA considered in the aggregate the various factors that Dr. Young testified to? Yes, Your Honor. On page three of the BIA's decision, the first sentence of the second to last paragraph, the respondent fears that his former gang membership and his numerous tattoos will impute gang membership and make him a target for torture upon return. And then in the next couple of sentences, it discusses what the immigration judge found. The record does not establish that it's more likely than not that the respondent would be stopped by Salvadoran government officials or gangs because of his tattoos and criminal history, and then tortured because of the imputed gang affiliation, even when the risks from each source are considered in the aggregate. And then on the next page, I believe it's page four, the board cites the Cole decision to get – no, this page five, rather, Your Honor. Page five, the board again addresses the aggregate risk, addresses petitioner's contention that the immigration failed to do this analysis, and the board agrees that the immigration judge analyzes appropriately. What's the IJ saying after aggregating all the risks referred to in the record? Immigration court finds that the petitioner has not met his burden, and the board determines this reflects consideration of the risk of torture from any and all sources in the aggregate, and it even cites Cole V. Holder. And then in the next paragraph, it discusses the LGBT evidence in the record. So, counsel, we've got this – I think Judge Bide was referring to – we've got this kind of phenomenon that's been happening, especially in our circuit, where it's hard for me not to come away with the conclusion that if you bring in an expert and the expert says, I'm an expert on this, gets certified as an expert, and then says, what happened here, which is, as I recall, nothing in the expert report actually even reached the ultimate conclusion is more likely than not to be tortured. But at the very end of this expert's testimony, gets asked the question, says it's more likely than not the person will be tortured, that somehow that takes on some sort of talismanic significance that is almost – it's hard for me to see how the government can rebut it under our – and this case, to me, really illustrates that, because Dr. Young specifically says that he is not basing this on his own. He's never done any field work. He hasn't done empirical research. He specifically acknowledges, because the judge asked him, sounds like your expertise regarding sexual minorities stems from reading other academic sources. Is that correct? And he says, yes. So his expertise is totally – he's just read a bunch of stuff, and so he's an expert on it. And so what do we do with this – I guess, what does the government do with this issue where if you can find an expert and you hire an expert and you bring them in and they will say that you're – they'll say, I've looked, not based even on their own studies, but just based on their own reading of the same country conditions evidence that's already in the record. They reach this conclusion that when you put it all in the mixer, this person has a more than one in two chance of being tortured when they return to their country, which is an extremely high risk of torture. And the government, especially under our precedents, the government's just basically stuck with that. I think that – it's hard to not come to the conclusion that that's the silver bullet for any petitioner if they can just get one of these experts to testify, even though, as here, the AG comes in and says – I'm not the AG. The ALJ comes in and says, I've looked at the country conditions evidence. When I put it in the mixer, I don't reach 51 percent or whatever. We have a problem. You have a precedent problem in our circuit. But I don't know that the DOJ is going to do anything about that because you don't ask for – I mean, I think if you sought cert, you'd have a really good chance of getting the – because there's a real logical problem in these precedents. It just makes it so the expert is a silver bullet. But you're not – I mean, is the DOJ going to do anything about that or are you just going to keep losing these cases in the 9th Circuit? The DOJ's – the governor's position is that the agency is not required to accept an expert's testimony as undisputed fact. And in a mean die, the Supreme Court case, the mean die court underscored that it is the court of appeals that they must ask whether the agency's finding qualifies as one of potentially many reasonable possibilities. And this is a reasonable determination by the agency. And while the petitioner's arguments are not unreasonable, they compel the conclusion. I think it is, but the problem is you've got an expert who has reached a different conclusion. And you've seen – you've heard the arguments. They're saying, well, the agency did not do a good enough job of countering each of – not just the expert overall, but sort of each piece. Like they picked out a piece that the IJ didn't address and saying that that's enough. And under our precedents that say basically the expert – you know, the expert – and here I think this case really illustrates it because the expert is not testifying based on the expert's own – you know, the expert's not coming in as a separate piece of authority. The expert's expertise here isn't supposedly looking at everything that's already in the record. So, I mean, you've got a problem with the precedent. Well, here the board and the agency and the board notes the agency does not need to cite to every contention made by the petitioner. There was a 12-page affidavit, 27 pages of sworn testimony. It does not need to discuss each and every single piece of this evidence to demonstrate that it heard and thought and reviewed the evidence in a meaningful way. And that's true, but you have the other that says that if it's – you know, I think you're counseling our side is saying, but if it's a significant – I guess that's sort of in the eye of the beholder, but if it's a significant piece of evidence then they do have to cite to it. And so what ends up happening here is they'll find something that wasn't mentioned in the three- to six-page BIA decision and say they didn't mention this, this is significant. But the biggest problem is you've got this – where it says the mere fact that an expert's testimony is not corroborated by country conditions evidence is no longer a reason for rejecting that testimony. And here the expert's view is supposedly based only on the country conditions evidence, but can we, after this recent case, Velazquez-Samoa, can we say, well, the ALJ can say, could conclude you were basing your opinion purportedly on the country conditions evidence, so if it's not consistent with the country conditions evidence, if you're saying something different than the country conditions evidence, then I don't have to give your expert opinion extra weight. Could the ALJ do that in this case, or are we barred from doing that because of this precedent, Velazquez-Samoa? I'll answer your question in two parts. First, I'm going to address Velazquez and its treatment of Ming Dai, and then I'll follow up with an example from this case and the expert testimony. First, the Ming Dai decision does mention that other persuasive evidence could probably diminish the weight of an expert, but it doesn't impose a severe limit on what an agency needs to do when it is reviewing an expert's testimony or evidence. It's an example, I think the Ming Dai decision quotes, it's an example of how expert testimony could be diminished, but the Ming Dai court also states, even credible testimony can be insufficient to satisfy the burden of proof, and that's what the agency did here, because a lot of the testimony by the expert was general evidence of criminal violence in El Salvador, which we're not disputing, but El Salvador has criminal conditions and it struggles, but it's also putting forth good faith efforts. And for example, Dr. Young's testimony of a theoretical corrupt official that may make information available from a database to gang members does not meet the burden. Cap burden is a high burden. I believe it was Judge Van Dyke that mentioned the asylum burden is lower here when you're discussing persecution, but the cap burden is higher, and Dr. Young's testimony overall just did not meet petitioner's burden when the agency looked at the rest of the record, and the rest of the record is 2,000 plus pages long, and I could go on and on and cite to specific pages that support the agency's decision, but petitioner is essentially asking us to re-weigh the evidence, and the government contends that the best way to resolve this case is to hold that the petitioner failed to establish acquiescence, and that alone is just positive of his claim. Can I interrupt with a question? To me, the central question in this case is whether or not the failure of the IJ and then of the BIA in reviewing the IJ to discuss the aspect of Dr. Young's testimony to which we're referring was sufficient to merit a remand. That is to say, Dr. Young did testify that he was in some danger because he would be perceived as a former gang member, a former gang member in the United States by an El Salvadoran gang. Why is that of so little importance that we need not remand to have the agency address that argument? The expert's evidence was appropriately considered here. Well, that argument might have been considered, but if they considered it, they did so silently. The IJ specifically cited the expert. Well, of course he did. We know that. It discussed the IJ cited the expert, the IJ cited the expert, and the Deported in Danger article that the expert repeatedly approved in his testimony. Counsel, the IJ mentioned Dr. Young once. It's on page five. That's the only place I could find. The BIA referred to him twice. But the immigration judge did go on to cite the Human Rights Watch Deported in Danger article that Dr. Young repeatedly approved of, and that article, it just doesn't compel the conclusion. For example, that article that the expert approved of repeatedly in his testimony discusses this program called the Ocambio, which works with former gang members and incarcerated persons in El Salvador to rehabilitate and reintegrate them into society. The demand is high. Yes, they have a lack of budget. That's an issue. But participants are given a certificate to carry and to verify to police, but they are not gang-related. The same article goes on to discuss the story of a gay man that lives near a police station, and he says, yes, I'm stopped frequently, but I present my papers. And in this voluminous record, there's many instances that demonstrate that El Salvador is not acquiescing to the harm petitioner fears, much the opposite, and it's the same with LGBT issues as well. They have enacted legal protections, and the evidence discusses the LGBT community openly operating in El Salvador. They hold gay pride parades, and it's not disputed that there's discrimination and sometimes violence committed against minorities, but does it rise to the level of torture? Does it compel the conclusion here? And the IJ issued a well-reasoned written decision. The board thoroughly addressed every contention made by petitioner, and when you go down the rabbit hole of discussing all the evidence in the record, it becomes to end up just being reweighing the evidence. And when petitioner failed to establish acquiescence, that alone is enough to uphold the board's determination here. All right. I don't think we have any further questions. We're taking a little bit over, so thank you very much to the government, and we'll hear from Petitioner's Council on Rebuttal, and I think why don't we put two minutes at least on the clock. Thank you, Your Honor. I have three quick questions. First, as an officer of the court and someone who's been in immigration law for 20 years, I promise you we lose, even under this standard, and the DHS can challenge the expertise of the expert. They did not do so on this record, which is that AR-201, the IJ, accepted him as an expert on this level. Two, on remand, even if the court sends this back to the BIA, the BIA need not accept this expert. However, under Valeska-Samayoa or Cole, they have to say why. That is all that is required, not to accept it. I read it, the IJ accepted, you know, the IJ specifically said, so you're testifying based on having looked at all this stuff, not on your own. And he said, yeah. And he said, well, I think that's the basis to be an expert, and I think it could be. It's somebody that comes in and can help the court in being able to see how all of this huge amount of material in the country conditions evidence can be sort of distilled down. So I don't, but then I don't know that that necessarily needs, my concern is more that what do you then do with that if that person says stuff that's quite inconsistent with or goes way further than the supposed material that they're relying on? To do exactly what you said, or they said that exceeds the scope. That's not supported in the record. That's not supported. There's a conflicting evidence. Can I ask you something? This is actually something I thought of. If you didn't have, if Dr. Young was not in this case at all, do you think that the country conditions evidence and all of the materials that are in the record, because they were the materials that Dr. Young was relying on, that all of that, that this would merit reversal in this? No. Okay. That's actually kind of important because Dr. Young, if Dr. Young just says I'm relying on those materials, then we really are sort of giving his conclusions sort of some sort of talismanic, because I don't think it's even close, because 50% risk of torture is mind-boggling. It's terrifying to think of that. And if you look at all the materials he's relying on, he goes through in his testimony and he says this is very high, but when I run the numbers, and we're talking about less than 1% chance of this over here, less than 1%, and then somehow he throws it all in the mixer and he comes out with over 51%. What's an ALJ supposed to do with that? It seems to me an ALJ could look at it and be like, your testimony and all of the stuff you're relying on just doesn't support that, but you're saying that's not enough. What else could the ALJ have said? Your Honor, the role of the expert is an educator, where they distill these facts and explain how they're going to operate, and we saw that here where he explained what the motive is. There is not a motive in the country conditions on themselves. He explained why the gangs, because they control so much of the country, why they have a vested interest in destroying those who threaten the authority. That is expert evidence that he uniquely can provide and explain to the court. But he said he hasn't done any research in the country. He hadn't done any empirical research. He hadn't been to the country. So he was relying on materials. So if there's no material out there saying, if what I think you just said is there's no material on that slice that actually supports what he's saying, then he's just pulling that out of the air. Your Honor, on AO 201 and 202, he explains that he also has testified in 230 cases. He has developed 30 declarations where he also did individual. I'm very familiar with. So he obtained. But those 230 were not all in El Salvador, correct? He had 30 extra declarations where he was able to get more information and more individualized research. And based on that information, he was able to explain the motive. I don't think that's a correct, because it's true he does seem to have specialized information from having been to countries for some of the countries where he's testified about. But I think he was asked specifically about this country, and he said, no, I haven't been there. I mean, this is what the government's position was, is you're not really an expert on this country. And he said, no, but I've read a lot about it, basically. And then the IAJ said he could be an expert for this. But it was based on what he studied. It was on gay men in El Salvador, which was the issue where he supplemented his expertise on gangs in general. But the question is that my client here has unique vulnerabilities. He's a gay man. He's a former gang member. And those were factors that the IAJ did not consider in a whole, that the BIA did not consider at a whole. IAJ says on page 94, although Dr. Young stated that the United States government provided El Salvadoran officials with information regarding deportees' criminal records, tattoos, and gang affiliations. Well, gang affiliation would be, I mean, he doesn't have a current gang affiliation. His only gang affiliation is his past gang affiliation in the United States, which Judge Fletcher was referring to earlier. So the IAJ does actually mention it. And I agree with you that it's conclusory. These decisions are always conclusory. But that's why we have to look through and say, you know, is there any there there? And I'm struggling with that part. On page 80, he always classified it as imputed gang membership. And even in the paragraph that my sister read, if she continued, the BIA classified it as, quote, because of an imputed gang affiliation. The agency did not consider the former gang. But I'm saying that where he specifically mentions Dr. Young, he talks about Dr. Young's statement about gang affiliations. This is on page 94 of the record, page 5 of the IAJ's decision. And in so doing, he ignored the motive that's present only for former gang members. Your position is not only did he need to mention the past gang membership, he has to actually use the word motive. I don't know. And that's what Valesquez-Samoa says. It's not enough to look at imputed or the gang affiliation, but there he was the gang leader. Here it was both gang affiliation and the former gang member. Valesquez-Samoa said both had to be considered and was error when the agency did not consider the gang leader. Your position is the word gang affiliations does not take into account his former gang? Like you don't think the IAJ was thinking of his former gang membership here? Correct, because the motive is tied just to the former gang membership. That's what puts them in unique harm. Okay, no further questions. Thank you very much to both sides for your very helpful presentation today, and we'll move on to the next case.
judges: FLETCHER, BYBEE, VANDYKE